**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| FOLSOM STREET,<br><br>       Plaintiff,<br><br>     v.<br><br>SMALL BUSINESS ADMINISTRATION; and<br>ISABELLA CASILLAS GUZMAN,<br>Administrator, Small Business Administration,<br><br>       Defendants. | Civil Action No. 1:22-cv-00926-JMC<br><br>Judge Jia M. Cobb |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), Plaintiff Folsom Street hereby moves for summary judgment based on the accompanying Memorandum of Points and Authorities and the administrative record.  A proposed order is attached.

Dated: October 31, 2022

Respectfully submitted,

/s/ Caroline L. Wolverton
Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
Julie Busta
D.C. Bar No. 1022773
Lillian Rand
*Pro hac vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000

*Counsel for Plaintiff Folsom Street*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FOLSOM STREET,

        Plaintiff,

    v.

SMALL BUSINESS ADMINISTRATION; and
ISABELLA CASILLAS GUZMAN,
Administrator, Small Business Administration,

        Defendants.

Civil Action No. 1:22-cv-00926-JMC

Judge Jia M. Cobb

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
Julie Busta
D.C. Bar No. 1022773
Lillian Rand
*Pro hac vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000

Dated: October 31, 2022

*Counsel for Plaintiff Folsom Street*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

STATUTORY BACKGROUND.........................................................................................2

STATEMENT OF FACTS ...............................................................................................4

ARGUMENT ..................................................................................................................7

I.      Legal Standard ...................................................................................................7

II.     The SBA's Conclusion that Folsom Street does not meet the Revenue
        Requirements of a Live Venue Promoter is Erroneous.........................................9

        A.      The SBA's Conclusion that Folsom Street does not meet the
                Revenue Requirements of a Live Venue Promoter is Arbitrary and
                Capricious ................................................................................................9

        B.      The SBA's Conclusion that Folsom Street does not Meet the
                Statutory Revenue Requirement is Contrary to Law ................................11

III.    The SBA's Decision that Folsom Street is a Prurient Organization is Erroneous.............12

        A.      Application of an Incorrect Definition of Prurient is Contrary to
                Law ........................................................................................................12

        B.      The SBA's Disparate Treatment of Folsom Street Relative to
                Similar Entities is Arbitrary and Capricious .............................................13

        C.      The SBA's Decision that Folsom Street is a Prurient Organization
                is Arbitrary and Capricious and Unsupported by Substantial
                Evidence..................................................................................................14

CONCLUSION..............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ANR Storage Co. v. Fed. Energy Regul. Comm'n*,
    904 F.3d 1020 (D.C. Cir. 2018)................................................................................9, 14

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    745 F.2d 677 (D.C. Cir. 1984).....................................................................................8

*AT&T Corp. v. FCC*,
    86 F.3d 242 (D.C. Cir. 1996).......................................................................................9

*Balt. Gas & Elec. Co. v. Fed. Energy Regul. Comm'n*,
    954 F.3d 279 (D.C. Cir. 2020)......................................................................................9

*\* Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*,
    458 F. Supp. 3d 1044 (E.D. Wis. 2020).............................................................12, 13, 16

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)....................................................................................................8

*Commc'ns Satellite Corp. v. FCC*,
    836 F.2d 623 (D.C. Cir. 1988).....................................................................................8

*Dickinson v. Zurko*,
    527 U.S. 150 (1999)....................................................................................................9

*FCC v. Nat'l Citizens Comm. for Broad.*,
    436 U.S. 775 (1978)....................................................................................................8

*Henry v. Sec'y of Treasury*,
    266 F. Supp. 3d 80 (D.D.C. 2017)...............................................................................7

*Ho-Chunk, Inc. v. Sessions*,
    253 F. Supp. 3d 303 (D.D.C. 2017)..............................................................................7

*Immigr. & Naturalization Serv. v. Yang*,
    519 U.S. 26 (1996)..................................................................................................8, 11

*\* Kreis v. Sec'y of Air Force*,
    406 F.3d 684 (D.C. Cir. 2005)..................................................................8, 9, 10, 13, 14

*Marsh v. Ore. Nat. Res. Council*,
    490 U.S. 360 (1989)................................................................................................8, 10

ii

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).................................................................................................8

*Policy & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*,
    313 F. Supp. 3d 62 (D.D.C. 2018)........................................................................7

* *Roth v. United States*,
    354 U.S. 476 (1957).....................................................................................12, 16

*Transactive Corp. v. United States*,
    91 F.3d 232 (D.C. Cir. 1996)...............................................................................14

*WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*,
    110 F. Supp. 3d 44 (D.D.C. 2015)........................................................................8

*Xiaomi Corp. v. Dep't of Def.*,
    No. CV 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021)...........................9

**Statutes**

5 U.S.C.

    § 706.....................................................................................................................7, 8

15 U.S.C.

    § 9009a...................................................................................................................11

    § 9009a(a)(1)(A)....................................................................................................2, 3

    § 9009a(a)(1)(A)(iii).............................................................................................3, 4

    § 9009a(a)(1)(A)(vi)..................................................................................................3

    § 9009a(a)(1)(B)...................................................................................................3, 5

    § 9009a(a)(3)(A)(i).................................................................................3, 10, 11, 12

    § 9009a(b)(3)(A).........................................................................................................2

    § 9009a(c)...................................................................................................................2

    § 9009a(d)(1)(A)(i)....................................................................................................2

Pub. L. No. 116-120, § 324.............................................................................................2

Pub. L. No. 117-2, § 5005(a)..........................................................................................2

S.F., Cal., Ordinance 234-12 (Nov. 20, 2012)........................................................13, 16

S.F. Transp. Code § 6.7(a) ................................................................................................10

**Other Authorities**

California Venues Grant Program ........................................................................................7

Folsom Street, *FAQs* .................................................................................................9, 10

SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue
    Operators Grant Awardees* (Aug. 27, 2021) ..........................................................2, 3

SBA, *Shuttered Venue Operators Grantees* (Awards as of July 5, 2022)....................10

SFMTA, *Special Event Street Closure Application*.................................................9, 10

**INTRODUCTION**

This is an action for review of a final decision of the Small Business Administration ("SBA") denying a Shuttered Venue Operator Grant ("SVOG") award to Folsom Street ("Folsom Street" or the "Company"), a non-profit corporation that produces arts and cultural events celebrating LGBTQS+ and Alternative Sexuality Communities. The SBA denied Folsom Street's SVOG application based on reasoning that fails to pass muster under the Administrative Procedure Act ("APA").

First, in denying Folsom Street's application, the SBA erroneously found that Folsom Street does not meet the revenue requirements for SVOG eligibility. Specifically, the SBA found that Folsom Street's $10 requested payment at its street fair events does not count as a cover charge or front door entrance fee under the governing statute. The SBA failed to consider that the streets where the fair events take place must remain open to the public, that the requested $10 donation is effectively, or at least operates like, a cover charge or entrance fee, and that the agency has awarded SVOG funds to other entities that similarly request donations instead of sell tickets at their events. In the alterative, to the extent the SBA found the entrance fee to be a donation, it failed to properly exclude donation income from its revenue calculation.

Second, the SBA applied an incorrect standard for "prurient," which led to an erroneous conclusion that Folsom Street's annual events, including the Folsom Street Fair and the Up Your Alley Fair (the "Fairs"), are of a prurient sexual nature and therefore not eligible for SVOG awards. The SBA applied a definition of prurient that conflicts with the definition established by the Supreme Court, and also relied on reports of isolated instances of activity without accounting for Folsom Street's official policies preventing lewd conduct. The SBA's prurient finding was arbitrary and capricious for the additional reason that the SBA has granted SVOG awards to

similarly situated entities and not provided a legitimate explanation for the different treatment of Folsom Street.

As a result of the SBA's errors, Folsom Street is struggling to recover from the COVID-19 pandemic. The SBA's denial of Folsom Street's request for SVOG funds should be declared invalid and set aside as arbitrary and capricious, not supported by substantial evidence and contrary to law.

<div align="center">

**STATUTORY BACKGROUND**

</div>

The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, signed into law December 27, 2020, ("Economic Aid Act" or "Act") appropriated $15 billion for grants and operators of shuttered venues. Pub. L. No. 116-120, § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by appropriating an additional $1,249,500,000 for SVOG awards. Pub. L. No. 117-2, § 5005(a). SVOG awards may be used for specified business expenses, including payroll, rent, and utility payments incurred between March 1, 2020 and December 31, 2021. 15. U.S.C. § 9009a(d)(1)(A)(i). An eligible entity may receive a SVOG award in an amount equal to 45% of its gross earned revenue in 2019. *Id.* § 9009a(c). Businesses with 2021 first quarter revenues of no more than 30% of their 2019 first quarter revenues are also eligible for supplemental grants of 50% of the original award amount. *Id.* § 9009a(b)(3)(A); Press Release (No. 21-75), SBA, *SBA Opens Supplemental Grant Applications for Shuttered Venue Operators Grant Awardees* (Aug. 27, 2021), https://www.sba.gov/article/2021/aug/27/sba-opens-supplemental-grant-applications-shuttered-venue-operators-grant-awardees.

Eligible entities under the Act include live venue operators and promotors, as well as theatrical producers, live performing arts organization operators, museum operators, motion picture theatre operators, and talent representatives. *Id.* § 9009a(a)(1)(A). In addition to falling

<div align="center">

2

</div>

within an eligible business category, to qualify for a SVOG award a business must meet general eligibility criteria including, *inter alia*, that the business was fully operational on February 29, 2020, suffered at least a 25% reduction of gross earned revenue during at least one quarter of 2020 as compared to the same quarter in 2019, and has reopened or intends to reopen. *Id.* The Act lists a number of characteristics that would render an entity ineligible, including, *inter alia*, presenting live performances of a prurient sexual nature. *Id.* § 9009a(a)(1)(A)(vi), 9009a(a)(1)(B). The statute states in full:

> The term "eligible person or entity" shall not include a live venue operator or promoter, theatrical producer, or live performing arts organization operator, a relevant museum operator, a motion picture theatre operator, or a talent representative that—
>
> (i) presents live performances of a prurient sexual nature; or
>
> (ii) derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature.

*Id.* § 9009a(a)(1)(B).

The Act defines live venue operators and promoters to include entities that as a principal business activity organize, promote, produce or host "events by performing artists" for which there is a ticketed cover charge, performers are paid a guaranteed amount by contract, and not less than 70% of revenue is generated through ticket sales or event beverages, food or merchandise. 15 U.S.C. § 9009a(a)(3)(A)(i). Finally, the Act specifies additional characteristics of an eligible live venue operator (as well as an eligible live venue promoter, theatrical producer or live performing arts organization operator). The applicant must (1) put on events with defined performance and audience spaces; (2) use mixing equipment, a public address system, and a lighting rig; (3) engage one or more individuals to carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, and box office manager; (4) sell tickets or impose a

3

cover charge for most performances; (5) fairly pay artists; and (6) market its events including through print or electronic publications, websites, mass email, or social media. *Id.* § 9009a(a)(1)(A)(iii).

### STATEMENT OF FACTS

Folsom Street is a California non-profit corporation that has been producing arts and cultural events centered on the LGBTQS+ and Alternative Sexuality Communities since 1984, including the Fairs and multiple performance-based events every year at theaters, nightclubs, and venues throughout San Francisco. Admin. R. ("AR") 000256. Folsom Street promotes events that are sex positive, celebrate diversity of sexual orientation, and provide a safe space for self-expression in a non-prurient manner. *Id.* at 000412. The company's events feature emerging and marginalized artists, and create spaces and audiences for art and performance. *Id.* at 000256. Folsom Street is committed to cultivating a safe, open, and inclusive environment for alternative sexuality communities while supporting equity for BIPOC and LGBTQS+ people. *Id.* Folsom Street is widely recognized as a community arts and cultural institution, as reflected by its support from San Francisco Grants for the Arts, the Horizons Foundation, the Mayor's Office of Housing and Community Development, and the Office of Economic and Workplace Development. *Id.* at 000256. Folsom Street enforces a strict policy to intervene and stop any discovered instances of lewd behavior, including sexual activity, at its events. *See* Folsom Street, *Frequently Asked Questions (FAQ),* #10, https://www.folsomstreet.org/faq (last visited Oct. 31, 2022).

On April 26, 2021, Folsom Street applied for a SVOG award of $575,887.23. AR 000001–02. Folsom Street submitted documentation demonstrating its eligibility as a live performing arts organization operator and the certifications of eligibility required by the SBA's guidance on SVOG applications. *Id.* at 000001–145. Additionally, Folsom Street demonstrated that its losses in 2020

exceeded the 25% statutory threshold by submitting its federal tax returns for 2019 and quarterly Profit and Loss Statements for 2019 and 2020. *Id.* at 000022–58; 000130–36.

On July 28, 2021, Folsom Street learned from the SBA's portal that its application was denied. The portal's denial notice gave no explanation of why the SBA found Folsom Street ineligible. Shortly thereafter, on August 16, 2021, Folsom Street submitted an administrative appeal to the SBA. *Id.* at 000256–59. Having received no decision, on April 5, 2022, Folsom Street filed this action and claimed unreasonable delay. ECF No. 1.

On June 6, 2022, Folsom Street received from the SBA a boilerplate form titled "Why your Shuttered Venue Operators Grant application is ineligible." AR 000409–11.[1] The form lists the standard reasons a SVOG application could be ineligible and shows an "X" beside General Eligibility Criterion 9, which the form lists as "[m]ust not present live performances of a prurient sexual nature or derive directly or indirectly more than de minimis gross revenue through the sale of products or services," and identifies 15 U.S.C. § 9009a(a)(1)(B) as the "Statute Reference". *Id.* at 000409.

The June 6, 2022 marked document also included an "X" beside Promoter Eligibility Criteria 3 and 4, respectively: "[m]ust have the principal business activity as either: (1) Selling tickets to live concerts, comedy shows, theatrical productions, or other events by performing artists an average of not less than 60 days before the show date (2) Promoting live concerts, comedy shows, theatrical productions, or other events by performing artists with not less than 70% of the Promoter's earned revenue coming from ticket sales/cover charges, sales of

---

[1] These bates numbers are included on the June 6, 2022 matrix provided by the SBA upon Folsom Street's request that it be included in the administrative record. However, the SBA is in the process of providing Folsom Street with a supplemented full administrative record, which will include this matrix. The bates numbers are therefore subject to change.

merchandise/food/beverage (incl. alcohol), production fees / reimbursements, and/or nonprofit educational initiatives"; and "[m]ust require a ticket purchase or cover charge for most performances." *Id.* at 000410. On July 12, 2022, Folsom Street filed an Amended Complaint, arguing that the SBA awarded SVOG funds to LGBTQS+ festivals and cultural events that are similarly situated to Folsom Street, and that like those events, Folsom Street promotes events that celebrate diversity of sexual orientation and provide a safe space for self-expression in a non-prurient manner. ECF No. 13.

On August 5, 2022, Folsom Street received from the SBA a new decision (the "August Decision") stating that the agency was rescinding its previous decision and issuing a new decision. The August Decision states Folsom Street's application was denied because (1) it does not meet the SVOG eligibility criterion of generating at least 70% of its revenue from a cover charge for performances, and (2) it presents performances of a prurient sexual nature or derives more than de minimis revenue through sale of products or services, or presentation of depictions or displays, of a prurient sexual nature. AR 000409–16. The August Decision concluded that the Fairs are not ticketed events because the $10 gate charge at the Fairs is a requested donation. *Id.* at 000411. The SBA found that without Folsom Street's $376,274 in revenue from gate donations, it did not meet the requirement that 70% of its revenue originate from a cover charge for performances, presumably calculating Folsom Street's total earned revenue to include the gate donations. *See id.* at 000136.

The August Decision concluded that the prurient sexual nature exclusion applies based on "sexually suggestive clothing" shown in Folsom Street marketing materials, the allowance of nudity at the Fairs consistent with City of San Francisco regulations, unidentified social media posts that the decision says show sex acts at the Fairs, and a Wikipedia article and local news

6

reports describing nudity at the Fairs and what the decision characterizes as sexually suggestive acts. *Id.* at 000411–14. In making this finding, the SBA cited the Merriam-Webster dictionary's definition of prurient and stated that it "has generally viewed 'prurient interest' as characterized by arousing or appealing to sexual desires." *Id.* at 000410. The August 5, 2022 denial of Folsom Street's application is the SBA's final decision. *Id.* at 000416.

On August 30, 2022, Folsom Street filed its Second Amended Complaint, and on September 13, 2022, the SBA filed its Answer. ECF Nos. 21, 23. On September 20, 2022, the SBA produced the Administrative Record to Folsom Street. On October 4, 2022, Folsom Street was approved for the California Venues Grant Program.[2]

## ARGUMENT

### I.    Legal Standard

On a Rule 56 summary judgment motion in an APA case like this, "the reviewing court generally … reviews the [agency's] decision as an appellate court addressing issues of law." *Policy & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting *Henry v. Sec'y of Treasury*, 266 F. Supp. 3d 80, 86 (D.D.C. 2017)). "[T]he court must limit its review to the 'administrative record' and the facts and reasons contained therein to determine whether the agency's action was 'consistent with the relevant APA standard of review.'" *Id.* (quoting *Ho-Chunk, Inc. v. Sessions,* 253 F. Supp. 3d 303, 307 (D.D.C. 2017)).

---

[2] The California Venues Grant Program includes the same eligibility requirements as the Economic Aid Act. In particular, to qualify as an eligible independent live event under the California Program, the entity must earn "at least 70 percent of the earned revenue … through cover charges or ticket sales, production fees or production reimbursements, or the sale of event beverages, food, or merchandise." California Venues Grant Program, https://cavenuesgrant.com/. Additionally, organizations of a "prurient sexual nature, including businesses which present live performances of a prurient sexual nature and businesses which derive directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature" are deemed ineligible. *Id.*

The APA requires a reviewing court to set aside the Secretary's decision if it is contrary to the statute, arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with the law.  5 U.S.C. § 706.  An agency decision "would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 378 (1989) ("[I]n making the factual inquiry concerning whether an agency decision was 'arbitrary or capricious,' the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'") (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)); *see also FCC v. Nat'l Citizens Comm. for Broad*., 436 U.S. 775, 803 (1978) (agency action may be overturned as arbitrary or capricious "if [it is] not rational and based on consideration of the relevant factors") (citing *Citizens to Pres. Overton Park*, 401 U.S. at 413–16; *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys*., 745 F.2d 677, 683 (D.C. Cir. 1984) ("[T]he 'arbitrary or capricious' provision [of the APA] is a catchall, picking up administrative misconduct.").

Unexplained departure from agency policy is arbitrary and capricious.  *Immigr. & Naturalization Serv. v. Yang*, 519 U.S. 26, 32 (1996); *WMI Liquidating Tr. v. Fed. Deposit Ins. Corp.*, 110 F. Supp. 3d 44, 53–54 (D.D.C. 2015) ("An agency may be said to have acted arbitrarily or capriciously when it disregards its established policy without adequate explanation.") (quoting *Yang*, 519 U.S. at 32; *Commc'ns Satellite Corp. v. FCC*, 836 F.2d 623, 629 (D.C. Cir. 1988)).  Also,

an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so," and disparate treatment of similarly situated entities without justification is arbitrary and capricious. *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005); *Balt. Gas & Elec. Co. v. Fed. Energy Regul. Comm'n*, 954 F.3d 279, 285 (D.C. Cir. 2020) ("[T]he duty to explain inconsistent treatment is incumbent on the agency …"); *ANR Storage Co. v. Fed. Energy Regul. Comm'n*, 904 F.3d 1020, 1026 (D.C. Cir. 2018).

The APA requires an agency's factual conclusions to be supported by substantial evidence. *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999) (recognizing that courts review an agency's record-based factual conclusion "to determine whether it is supported by 'substantial evidence'"); *Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *7 (D.D.C. Mar. 12, 2021) (same). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" taking into account "whatever in the record fairly detracts from its weight." *AT&T Corp. v. FCC*, 86 F.3d 242, 247 (D.C. Cir. 1996) (quotations omitted).

## II.  The SBA's Conclusion that Folsom Street does not meet the Revenue Requirements of a Live Venue Promoter is Erroneous

The SBA arbitrarily and capriciously concluded that the $10 requested payment at the gate of Folsom Street's Fairs is a requested donation rather than a cover charge or ticket sale under the Economic Aid Act. Alternatively, accepting the SBA's finding that the payments are "donations" and not ticket sales, the SBA's inclusion of the donations in its gross earned revenue calculation is contrary to the SBA's guidance.

### A.  The SBA's Conclusion that Folsom Street does not meet the Revenue Requirements of a Live Venue Promoter is Arbitrary and Capricious

In concluding that the $10 gate charge at the Fairs is a requested donation, the August Decision failed to consider that the Fairs occur on San Francisco streets that must remain open to

9

the public per city code, and that Folsom Street, therefore, cannot deny entry to anyone so instead requests a $10 donation. *See* SFMTA, *Special Event Street Closure Application*, https://www.sfmta.com/special-event-street-closure-application (last visited Oct. 31, 2022) (stating that street fairs must be "free and open to the public"); *see also* S.F. Transp. Code § 6.7(a) (prohibiting impeding the public right of way on sidewalks). Most attendees pay $10 to enter the Fairs. *See* AR 000136 (showing $376,274.99 in revenue from gate donations). Additionally, the SBA has awarded SVOG funds to other entities that request donations rather than require the purchase of tickets, for example Greater Palm Springs Pride. *See* SBA, *Shuttered Venue Operators Grantees* (Awards as of July 5, 2022), https://data.sba.gov/dataset/svog; Greater Palm Springs Pride, https://apps.pspride.org/m/pspride/?appcode=pspride. The SBA has thus treated Folsom Street disparately from similarly situated entities as well as failed to consider relevant factors that show the requested $10 donation is effectively or at least operates like a cover charge or entrance fee, both of which make its conclusion that Folsom Street does not meet the revenue requirement arbitrary and capricious. *See Kreis*, 406 F.3d at 687; *Marsh*, 490 U.S. at 378

Alternatively, if Folsom Street's $10 gate charge is a donation and not a cover charge or entrance fee, then the August Decision arbitrarily failed to exclude the donations from Folsom Street's gross earned revenue. AR 000411. By the SBA's own instructions, unearned revenue, including donations and other gratuitous contributions such as grants, should not be included in gross earned revenue. *Id.* at 000446 (SBA's Shuttered Venue Operators Grants—Frequently Asked Questions) ("FAQ #183: "Are donations/contributions included in gross earned revenue? No. Only earned revenue should be included in calculations of gross earned revenue. Unearned revenue, including donations and other gratuitous contributions, such as foundation grants and individual gifts, should not be included."). The administrative record shows that Folsom Street's

total revenue in 2019, *excluding* donations, meets the statutory requirement of at least 70% of revenue coming from "cover charges or ticket sales, production fees or production reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise." 15 U.S.C. § 9009a(a)(3)(A)(i) (emphasis added). Folsom Street's 2019 total revenue excluding donations was $951,584.17. *Id.* at 000136. Its revenue from events other than gate donations—i.e., beverage, food, ticket sales, and merchandise sold at events—was $716,269.78, which is approximately 74% of Folsom Street's total revenue. *Id.* at 000136.

Under the SBA's own guidance, if the agency does not count the gate payments as ticket sales, it must treat them as donations and exclude the payments from the calculation of the gross earned revenue. AR 000446. The SBA's exclusion of Folsom Street's Fairs gate charges from earned revenue for purposes of 15 U.S.C. § 9009a(a)(3)(A)(i) while including the payments in the calculation of gross earned revenue is arbitrary and capricious because it departs from the agency's guidance without explanation. *Yang*, 519 U.S. at 32.

**B. The SBA's Conclusion that Folsom Street does not Meet the Statutory Revenue Requirement is Contrary to Law**

For the reasons set forth above in II.A, Folsom Street demonstrated that it satisfies the revenue requirements of a live venue promoter. Folsom Street earns 70% of its earned revenue, to the extent related to its live events, from cover charges or ticket sales, or the sale of beverages, food, or merchandise. Even accepting the SBA's conclusion that Folsom Street's ticket sales should be excluded as donations, Folsom Street still meets the revenue requirement because, *excluding* donations, grants, and fundraising events, approximately 74% of Folsom Street's total earned revenue in 2019 was generated through "cover charges or ticket sales, production fees or production reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise," as required by 15 U.S.C. § 9009a(a)(3)(A)(i).

11

Consequently, the SBA's denial of its application for failure to satisfy the revenue requirement is contrary to the Economic Aid Act.  *See id.* § 9009a.

### III.   The SBA's Decision that Folsom Street is a Prurient Organization is Erroneous

In concluding that Folsom Street is ineligible under the statutory exclusion for prurient sexual activity, the SBA applies a dictionary definition of "prurient" rather than the applicable Supreme Court definition.  The agency also relies on reports of isolated instances of unsanctioned activity that is contrary to Folsom Street's official policies.

#### A.  Application of an Incorrect Definition of Prurient is Contrary to Law

The SBA's August Decision incorrectly uses the Merriam Webster dictionary's definition of "prurient" in applying the Economic Aid Act's exclusion of entities that "present[] live performances of a prurient sexual nature; or derive, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature", 15 U.S.C. § 9009a(a)(3)(A)(i).  Based on that dictionary definition, the SBA interprets "prurient" as "characterized by arousing or appealing to sexual desires." AR 000410.

However, as defined by the Supreme Court, prurient subject matter appeals to a "shameful or morbid . . . interest in [] sex."  *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957); *see also Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1055 (E.D. Wis. 2020) (citing *Roth* standard for prurient in decision challenging the SBA's denial of Paycheck Protection Program funds).  The Supreme Court definition of prurient thus applies to a narrower set of activity—specifically, activity that is negative in nature—than the dictionary definition applied by the SBA.  Folsom Street's Fairs are sex positive, as explained above.

12

The SBA's application of a dictionary definition of prurient rather the Supreme Court definition is contrary to law.

### B. The SBA's Disparate Treatment of Folsom Street Relative to Similar Entities is Arbitrary and Capricious

The SBA violated the fundamental rule that agencies must treat similar cases similarly by awarding SVOG funds to organizations that put on LGBTQ+ oriented live performances, festivals, and cultural events analogous to those put on by Folsom Street. *E.g.*, *Kreis,* 406 F.3d at 687. The August Decision fails to distinguish those entities from Folsom Street so as to justify the disparate treatment.

The SBA awarded SVOG funds to entities that, like Folsom Street, put on events that celebrate and embrace sexually progressive lifestyles, including events focused on leather and kink. As the SBA points out in the August Decision, Phoenix Pride Incorporated includes an exhibit called "Erotic World" that features "adult retail, fetish demonstrations, and exotic dancers." AR 000414. Similarly, the San Diego Lesbian, Gay, Bisexual, Transgender Pride Inc. includes a section of the festival known as "The Leather Realm" that contains adult retail shops, workshops, and demonstrations. *Id.* at 000415.

The August Decision attempts to distinguish those entities from Folsom Street by claiming that there is either no evidence of nudity or "complete[] nud[ity]" at their events. *Id.* at 000414–15. Nudity, however, does not necessarily mean "prurient." *Camelot Banquet Rooms, Inc.*, 458 F. Supp. 3d at 1051 (recognizing that for the Government to prevail on its argument that a business was prurient, it would at a minimum need to show that the "kinds of nude and semi-nude performances" specific to the case were prurient). Indeed, the City of San Francisco allows nudity at permitted parades, fairs, and festivals, including the Fairs. *See* S.F., Cal., Ordinance 234-12

13

(Nov. 20, 2012); Folsom Street, *FAQs*, #9.  Nudity, therefore, cannot be the only distinguishing factor between Folsom Street and the other similarly situated entities.

With regard to the additional similarly situated organizations Folsom Street identified, the SBA states that Krave Spring Break, Wigwood, Bushwig, Fire Island Pines Pavilion, Happy Dark Productions, and Greater Palm Springs Pride do not contain "sexual demonstrations" designed to arouse patrons.  AR 000414–15.  However, the SBA simultaneously admits that other entities on the list, including Phoenix Pride Incorporated, San Diego Lesbian, Gay, Bisexual, Transgender Pride, Inc., Stokes Live Entertainment, and Neverland Events and Artist Management Corporation, put on and feature events that either include "sexually suggestive dancing," "demonstrations," and even "fetish demonstrations."  *Id.* at 000414.

Thus, in distinguishing Folsom Street from the similarly situated entities identified by the Company, the SBA makes inconsistent findings and applies different requirements to different organizations.  The SBA failed its duty under the APA to provide a legitimate reason for treating Folsom Street differently from similarly situated entities.  *See, e.g.*, *Kreis*, 406 F.3d at 687.  Its decision is therefore arbitrary and capricious.  *See Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996) ("A long line of precedent has established than an agency action is arbitrary when the agency offered insufficient reasons for treating similar situations differently."); *see also ANR Storage Co.*, 904 F.3d at 1026.

### C. The SBA's Decision that Folsom Street is a Prurient Organization is Arbitrary and Capricious and Unsupported by Substantial Evidence

The SBA's final decision on Folsom Street's SVOG application stated that Folsom Street was ineligible because "it presents live performances of a prurient sexual nature or derive[s] directly or indirectly more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays of a prurient sexual nature."  AR 000412.

14

However, the SBA bases this conclusion on isolated instances of activity that are not sanctioned by Folsom Street, and that are contrary to Folsom Street's stated policies and practices.

The August Decision concludes that "a significant attraction of the street fairs is the permitted, and even encouraged, public displays of sexual nature, including widespread nudity and actual live of sexual acts." *Id.* at 000414. But the decision does not describe what it means by "public displays of sexual nature," and cites no support for its conclusion that Folsom Street encourages sexual acts at the Fairs. The August Decision goes on to say that Folsom Street "encourages people to attend the Up Your Alley to 'watch eyepopping performances' [] at the festival." AR 000414. However, "eyepopping" is not a synonym for prurient or even sexual, and the SBA makes no connection between Folsom Street's marketing for its Up Your Alley fair and the agency's conclusion of prurient activity.

Significantly, rather than encourage sexual acts at its Fairs, Folsom Street explicitly prohibits prurient activity. Folsom Street maintains a strict policy and practice of intervening in any discovered instances of lewd behavior at the Fairs, including public sexual activity, and complies with all local, state, and federal laws. *See* Folsom Street, *FAQs, #10.* Folsom Street's enforcement policy includes warning patrons to take any lewd activity away from the fair and, if necessary, ejecting violators from the Fairs. *Id.* If violators are found back on the fairgrounds, Folsom Street will involve the San Francisco Police Department. *Id.*

The August Decision's conclusion appears to be based on reports of unsanctioned activity, specifically simulated sexual acts and sex acts, at the Fairs by a few attendees. AR 000413. The decision recognizes that "it may be patrons or vendors conducting this [prurient] activity rather than Folsom Street events itself." *Id.* at 000414. The SBA does not explain why isolated instances

15

of conduct that Folsom Street prohibits and actively seeks to prevent merit a conclusion that the Fairs overall are prurient.

The SBA also points to Folsom Street's mission statements on its tax return and bylaws, which explain that Folsom Street's mission is to "create world class leather and fetish events that unite the adult alternative lifestyle communities with safe venues for self-expression and exciting entertainment," that Folsom Street "is committed to cultivating a safe, open, and inclusive environment for the kink, leather, and alternative sexuality communities while centering equity for BIPOC and LGBTQAZ2I+ people in [its] work," and that Folsom Street is "dedicated to sexual liberation and the right to pleasure as a crucial part of the whole liberation movement." *Id.* at 000415. Leather, fetish, kink and alternative sexuality are not inherently prurient, and the SBA's decision does not explain in what way Folsom Street's mission is evidence of prurient activity. *See Roth*, 354 U.S. at 487 n.20.

Finally, the August Decision cites marketing materials that display "individuals in sexually suggestive clothing" and event maps that show a "clothing and coat check" section of the festival. *Id.* at 000412. Again, the SBA does not explain why sexually suggestive clothing is prurient. Similarly, nudity, even "widespread nudity" does not alone equate to "prurient," and the SBA did not make any finding as to how or why nudity at the Fairs is prurient. *Camelot Banquet Rooms, Inc.*, 458 F. Supp. 3d at 1051 (recognizing that government would need to show that the *kind* of nude and semi-nude performances at issue were prurient to establish disqualification for PPP loan). Again, the City of San Francisco *allows* nudity as part of permitted parades, fairs, and festivals, including the Fairs. *See* S.F., Cal., Ordinance 234-12; Folsom Street, *FAQs*, #9.

The SBA's conclusion that Folsom Street's Fairs are prurient is unsupported and thus arbitrary and capricious as well as not supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, the Court should grant summary judgmenpt in favor of Folsom Street, declare invalid and set aside the SBA's denial of Folsom Street's SVOG award application, and direct the Agency to reconsider the application consistent with the APA and Economic Aid Act.

Dated: October 31, 2022                    Respectfully submitted,

<div style="margin-left:40%">

*/s/* Caroline L. Wolverton
Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
Julie Busta
D.C. Bar No. 1022773
Lillian Rand (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000

*Counsel for Plaintiff Folsom Street*

</div>

17