**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOLSOM STREET,<br><br>Plaintiff,<br><br>v.<br><br>SMALL BUSINESS ADMINISTRATION, *et al.*,<br><br>Defendants. | Case No. 22-cv-926 (JMC) |

# MEMORANDUM OPINION

During the COVID-19 pandemic, Folsom Street, a non-profit organization in San Francisco, applied for a Shuttered Venue Operators Grant (SVOG) award from the Small Business Administration (SBA).[1] The SVOG program provided "emergency financial assistance to eligible live entertainment businesses impacted by" the pandemic. ECF 1 ¶ 2. As part of its application, Folsom Street submitted documentation indicating that the organization's mission was to "create world-class leather and fetish events that unite the adult alternative lifestyle communities with safe venues for self expression and exciting entertainment." ECF 52-2 at 22.

The SBA denied Folsom Street's application for an SVOG award, citing, among other grounds, a statutory prohibition banning the issuance of such awards to entities that "present[] live performances of a prurient sexual nature" or derive material revenue from such performances. 15 U.S.C. § 9009a(a)(1)(B). Folsom Street filed this suit under the APA, challenging the denial of the award as arbitrary and capricious, contrary to law, and unsupported by substantial evidence in

[1] Folsom Street also named as a Defendant the then-Administrator of the SBA, Isabella Casillas Guzman. The Court will substitute the current Administrator Kelly Loeffler as a defendant pursuant to Federal Rule of Civil Procedure Rule 25(d) and collectively refer to both Defendants as the SBA throughout this opinion.

the record. ECF 21 ¶¶ 53–72. Because the SBA's denial decision complied with the requirements of § 9009a and the APA, the Court **GRANTS** the SBA's cross-motion for summary judgment and **DENIES** Folsom Street's motion for summary judgment. ECF 33; ECF 31.[2]

## I. BACKGROUND

Folsom Street is a San Francisco-based nonprofit whose mission is to "create world-class leather and fetish events that unite the adult alternative lifestyle communities with safe venues for self expression and exciting entertainment." ECF 52-2 at 22. It hosts multiple in-person "arts/entertainment and cultural events" that "support artists and performers [who] are often left out of the mainstream." *Id.* at 160–61. During the COVID-19 pandemic, Folsom Street was unable to host these events, causing it to "los[e] nearly 83% of [its] gross revenue from 2019–2020." *Id.* at 160.

In April 2021, Folsom Street applied to the SBA for an SVOG award of over $500,000. *Id.* at 1–2. In July 2021, Folsom Street allegedly learned (by viewing the SBA's online portal) that its application had been denied, with no explanation of the denial given. ECF 21 ¶ 24. So, in August 2021, Folsom Street submitted an administrative appeal of the denial. ECF 52-2 at 160–63. In its appeal, Folsom Street argued that it met all the requirements to be eligible for an SVOG loan, including the requirement that Folsom Street "not present live performances of a prurient sexual nature." *Id.* After the organization did not hear from the agency for eight months, Folsom Street filed its initial complaint, asking the Court to compel the SBA to "issue a decision on Folsom Street's SVOG appeal as soon as possible." ECF 1 at 7.

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

But the SBA ended up deciding the appeal before Court intervention. In June 2022, the SBA issued a "final decision" once again denying the application. *See* ECF 52-2 at 19; ECF 10 ¶ 3. The SBA allegedly communicated this denial to Folsom Street by providing it with a "boilerplate form" which showed only that Folsom Street failed to satisfy the SBA's "General Eligibility Criterion 9" and "Promoter Eligibility Criteria 2 and 3."[3] ECF 21 ¶¶ 29–30. As relevant here, "General Eligibility Criterion 9" is the prohibition on "live performances of a prurient sexual nature," which is derived from 15 U.S.C. § 9009a(a)(1)(B). *See* ECF 52-2 at 162.

Folsom Street then filed its first amended complaint, challenging the SBA's denial as arbitrary and capricious, contrary to law, and unsupported by substantial evidence. ECF 13. Folsom Street alleged in part that the SBA's denial was unlawful because the SBA failed to "provide . . . reasoning for its decisions." *Id.* ¶ 40; *see also id.* ¶¶ 40, 50 (alleging that the SBA "provided only a form with conclusory statements" and that the SBA did not provide "[any] evidence in the record" in support of the denial). The SBA quickly mooted that argument, however, by issuing a letter which "further explain[ed] the rationale for [the] continued denial of Folsom Street's application."[4] ECF 52-2 at 175. The agency's letter explained that, under the governing statute, "SVOG awards cannot be issued to a person or entity that presents live performances of a prurient sexual nature; or derives, directly or indirectly, more than de minimis gross revenue through the sale of products or services, or the presentation of any depictions or displays, of a prurient sexual nature." *Id.* at 176 (quoting 15 U.S.C. § 9009a(a)(1)(B)). While the statute the agency cited does not define "prurient," *see* 15 U.S.C. § 9009a, the agency said that the statutory definition of "prurient" is "characterized by arousing or appealing to sexual desires," ECF 52-2 at

[3] This denial is not included in the Parties' Joint Appendix. *See* ECF 52-2.

[4] *See Concert Inv., LLC v. SBA*, 100 F.4th 215, 220 (D.C. Cir. 2024) ("Where an agency's prior explanation fails to fully explain its reasoning, the agency may offer a fuller explanation of its reasoning at the time of the agency action.").

176. The agency also noted that it viewed the term "prurient interest" to "include nudity in specific contexts," particularly contexts where nudity is offered "to arouse or appeal to sexual desires." *Id.*

The SBA reached this definition on two grounds. First, it said that its definition of "prurient" is analogous to the dictionary definition of "prurient," which is listed as "marked by or arousing an immoderate or unwholesome interest or desire," and "especially: marked by, arousing, or appealing to sexual desire." *Id.* (quoting *Prurient*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/prurient). And second, it said that the text of § 9009a is a mirror of the text from an SBA regulation, which suggests that Congress meant to codify the SBA's own definition of the word "prurient" (which, again, the SBA has "generally viewed" to mean "characterized by arousing or appealing to sexual desires"). *Id.* (citing 13 C.F.R. § 120.110(p), and 60 Fed. Reg. 64356, 64360 (Dec. 15, 1995)).

The agency then applied its definition of "prurient" to Folsom Street's activities to determine whether Folsom Street "presents live performances of a prurient sexual nature." 15 U.S.C. § 9009a(a)(1)(B)(i). The SBA determined that it did, and thus that it was ineligible for an SVOG award. ECF 52-2 at 180. In reaching this conclusion, the SBA cited Folsom Street's representations that its primary activity is the operation of street fairs that aim to "create world-class leather and fetish events that unite the adult alternative lifestyle communities with safe venues for self expression and exciting entertainment." *Id.* at 178. The SBA also looked at Folsom Street's mission as reported in its bylaws, which states that the organization is "committed to cultivating a safe, open, and inclusive environment for the kink, leather, and alternative sexuality communities." *Id.* Further, the agency reviewed both Folsom Street's marketing materials, which "display several individuals in sexually suggestive clothing," and event maps for Folsom Street

events, which included a "clothing and coat check" (such that the agency understood Folsom Street events to "promote[,] or[] at least encourage, nudity"). *Id.*

The agency then looked at the Wikipedia page for the Folsom Street Fair (one of Folsom Street's flagship events). *Id.* That page described the festival as "the world's largest leather event and showcase for BDSM products and culture."[5] *Id.* It also showed photos of people at the event in "suggestive clothing," "fully naked," and "simulat[ing] sexual acts." *Id.* at 179. The agency also saw similar images from social media, where patrons posted pictures or videos of "sex acts occurring at the Folsom Street fair [with] onlookers watching." *Id.*

The agency also looked at local news articles describing the event. *Id.* These public sources reported that the fair featured attendees dressed in "latex, leather, rubber and other fetish clothing," as well as vendors selling goods ranging from "handmade leather whips to beautiful latex dresses." *Id.* These articles also highlighted an "erotic artists' stage" at the fair, where performers demonstrated "the full range of expression inherent in leather and BDSM." *Id.*; *see also id.* (Folsom Street Fair described as featuring "ample live BDSM demonstrations" and "showcas[es] [of] kinky wares"). Based on these various sources, the SBA concluded that "Folsom's events fall within SBA's definition of displays of a prurient sexual nature, including nudity intending to arouse or appeal to sexual desires, and are therefore ineligible for an SVOG grant." *Id.* at 180.

The agency had previously granted SVOG awards to at least ten other entities that were allegedly "similarly situated" to Folsom Street, in that they promoted "LGBTQ2S+ festivals and cultural events." *Id.* Folsom Street pointed to these ten entities in its first amended complaint as

[5] "BDSM is an overarching abbreviation of bondage and discipline, dominance and submission, and sadism and masochism and refers to a physical, psychological, and sexual role-play involving power exchange between consensual participants." *McNeil v. Duncan*, No. 19-cv-694, 2020 WL 1536252, at *2 n.3 (D.D.C. Mar. 31, 2020) (quoting Nele De Neef et al., *Bondage-Discipline, Dominance-Submission and Sadomasochism (BDSM) From an Integrative Biopsychosocial Perspective: A Systematic Review*, 7 Sexual Medicine 129, 129 (2019)).

evidence that it was being arbitrarily singled out for grant denial. *See* ECF 13 ¶¶ 33–34. The SBA's final decision letter (issued after the first amended complaint was filed) examined these ten comparators but ultimately concluded that all of them were "sufficiently distinguishable from Folsom Street." ECF 52-2 at 182. In particular, the SBA noted that it had been unable to discover any evidence that the ten entities promoted events that featured "nudity with the intent to sexually arouse patrons." *Id.* 180–82. In the instances where these entities *did* promote "displays of sexually provocative clothing or dancing," the agency determined that such displays were "minimal," "not sufficiently related to the [entities'] principal business activity," and, importantly, did not feature full nudity. *See id.* at 182. The agency found—based on the evidence described above—that the same was not true for Folsom Street. *See id.* (Folsom Street events were "distinguishable" from other events because Folsom Street events featured "nudity . . . that is designed to arouse patrons"). Accordingly, the SBA's review of these allegedly similarly-situated entities "did not change the SBA's final decision as to Folsom Street's eligibility." *Id.*

After the agency issued the letter explaining its denial, Folsom Street filed the operative complaint now at issue in this case. ECF 21. The SBA answered, ECF 23, and the Parties filed motions for summary judgment. ECF 31; ECF 33.

## II. LEGAL STANDARD

The Court will grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, "the evidence is to be viewed in the light most favorable to the nonmoving party," and "the court must draw all reasonable inferences" in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "When a party seeks review of agency action under the APA, the district judge sits as an appellate

tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In other words, in an APA case, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

"Under the [APA], a court may set aside an agency's final decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013) (citing 5 U.S.C. § 706(2)(A)). A court "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Id.* That explanation need not be comprehensive; an agency must provide only a "brief statement" to explain "why it chose to do what it did." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). And courts afford the agency's explanation considerable deference: A court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 1351–52.

## III. ANALYSIS

Under the relevant statute, the SBA may only issue SVOG awards to an "eligible person or entity." 15 U.S.C. § 9009a(a)(1). Congress excluded from the definition of "eligible person or entity" any entity that "presents live performances of a prurient sexual nature" or "derives, directly or indirectly, more than de minimis gross revenue" from activities "of a prurient sexual nature." *Id.* § 9009a(a)(1)(B). The SBA argues that its conclusion that Folsom Street was precluded from receiving an award under that provision was lawful. ECF 34 at 17–24. The Court agrees.[6]

[6] The SBA also denied the award on the basis of a separate provision, which says that operators of live events can only qualify for awards if they earn at least 70% of their revenue from "ticket sales, production fees or product reimbursements, nonprofit educational initiatives, or the sale of event beverages, food, or merchandise." 15 U.S.C.

**A. The SBA's Interpretation of "Prurient" Was Not Contrary to Law.**

A Court must set aside an agency's decision if the decision was contrary to law. *See* 5 U.S.C. § 706(2)(A). Folsom Street argues that the SBA's denial was contrary to law because the SBA incorrectly interpreted the meaning of the word "prurient" within § 9009a. ECF 31 at 18–19. While the SBA defined "prurient" by referring to the Merriam-Webster dictionary, *see* ECF 52-2 at 176, Folsom Street says that the SBA should have instead looked to Supreme Court case law, ECF 31 at 18. That matters, Folsom Street says, because under the Merriam-Webster definition the SBA used, the word "prurient" means "marked by or arousing an immoderate or unwholesome interest or desire," and "especially: marked by, arousing, or appealing to sexual desire." ECF 52-2 at 176 (quoting *Prurient*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/prurient). By contrast, the definition Folsom Street derives from Supreme Court case law is something that appeals to a "shameful or morbid interest in sex." ECF 31 at 18 (citing *Roth v. United States*, 354 U.S. 476, 487 n.20 (1957)). Folsom Street argues that because the latter definition only covers "activity that is negative in nature," Folsom Street's activities would not be "prurient" under that meaning, because all of Folsom Street's activities are "sex positive." *Id.*

The Court does not defer to an agency's interpretation of a statute. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). But all the same, the Court finds that the SBA's interpretation is closer to the correct one.

First, the SBA's decision to interpret "prurient" by reference to a contemporaneous dictionary definition is a method of statutory interpretation long recognized by courts. The Supreme Court has directed courts to look to an undefined term's "ordinary, contemporary,

§ 9009a(a)(3)(A)(i)(II). The parties dispute whether the SBA's conclusion on that front was correct. *See* ECF 31 at 15–18; ECF 34 at 13–17. Regardless, the Court need not consider that issue, because the denial on prurience grounds is dispositive. *See* 15 U.S.C. § 9009a(a)(1)(B).

common meaning" at the time when Congress enacted the statute, and "contemporary dictionaries" are a key way to get at that meaning. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 433–34 (2019); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227–28 (2014). Here, § 9009a(a)(1)(B) was enacted in December 2020. Pub. L. No. 116-260, § 324, 134 Stat. 1182, 2025 (2020). The agency states that it consulted the definition of prurient in 2021 via a respected dictionary. *See* ECF 50 at 8 (explaining that the SBA applied the "2021 Merriam Webster dictionary definition of 'prurient'"); ECF 52-2 at 176 (quoting *Prurient*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/prurient). That is a valid approach to interpretation that all courts, including this Court, routinely use.[7] Folsom Street has offered no argument as to why it should not apply here.[8]

Second, the Court finds independently persuasive the argument that in enacting § 9009a(a)(1)(B), Congress sought to codify the SBA's own understanding of "prurient." *See* ECF 34 at 19–20. At the time Congress enacted § 9009a(a)(1)(B), the SBA had, for more than two decades, disallowed the issuance of certain loans to businesses that engaged in prurient sexual activities. *See* Business Loan Programs, 60 Fed. Reg. 64356, 64359 (Dec. 15, 1995). And when Congress enacted § 9009a(a)(1)(B), it used text that mirrors the language from that regulation. *See* 13 C.F.R. § 120.110(p). It is a canon of interpretation that when "Congress adopts a new law

---

[7] *See, e.g.*, *Le v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-501, 2025 WL 1743942, at *8 (D.D.C. June 24, 2025).

[8] Folsom Street argues in reply that the SBA relied on an "incomplete" definition from the Merriam-Webster dictionary. ECF 35 at 9. It suggests that because the dictionary describes prurient as "immoderate" or "unwholesome," and the Merriam-Webster *thesaurus* separately describes immoderate as "going beyond a normal or acceptable limit in degree or amount" and unwholesome as "bad for the well-being of the body," the SBA's definition of "prurient" must necessarily incorporate those separate (more negative) meanings. *Id.* (citing thesaurus). But these cherry-picked definitions do not help. The dictionary definition of "immoderate," for instance, is "exceeding just, usual, or suitable bounds." *See* Immoderate, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/immoderate. The agency could certainly have properly decided that a street fair featuring significant nudity, fetish wear, and the simulation of sexual acts "exceed[ed]" the "usual bounds" of arousing sexual desire in a public performance. Additionally, Folsom Street cites no authority for the proposition that an agency or court is not only required to consider the definition of words in a statute, but also the definition of words *within* the definition, in order to properly interpret the law.

incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978). Thus, there is a presumption that when Congress enacted § 9009a(a)(1)(B) by using text from an SBA regulation, Congress intended the meaning of "prurient" within the statute to have the same meaning that the SBA afforded "prurient" under the regulation. *See Sokol World Ent., Inc. v. SBA*, No. 21-cv-2385, 2025 WL 870323, at *8 (D.D.C. Mar. 20, 2025) ("Congress expressly incorporated the precise terms of SBA's regulations governing its other financial assistance programs when passing the SVOG statute."). That matters because the SBA has long interpreted "prurient" in the context of its § 120.110(p) regulation to be something distinct from obscenity. *See* Business Loan Programs, 60 Fed. Reg. 64356, 64360 (Dec. 15, 1995) (proposed rule saying that SBA has authority to exclude from grants activities that are "obscene, pornographic, *or* prurient" (emphasis added)). That contrasts with Folsom Street's preferred definition, which overlaps to some extent with "obscene." *See* ECF 35 at 8–9; *see also Roth v. United States*, 354 U.S. 476, 487 (1957). And in any case, the Court finds no basis in the statutory history to conclude that "prurient" must equate with a "shameful or morbid interest in sex." *Contra* ECF 31 at 18. There is therefore no reason to not apply the dictionary definition in this case.

And third, there is no reason that the SBA should have used a definition of "prurient" from *Roth*, because that case concerned the interpretation of the phrase "obscene material" within the context of a criminal statute. *Roth*, 354 U.S. at 487. The Court in that case gave dictionary definitions of the word "prurient" in a footnote only after it had used the word "prurient" within its definition of "obscene material." *Id.* at 487 n.20. This Court does not believe that the inclusion of that twentieth footnote suggests that the Supreme Court intended to put the legal meaning of

"prurient" in amber, such that the same definition would apply to a different statute enacted more than half a century later.

In any case, the SBA could reasonably have decided that Folsom Street's activities fall under the Supreme Court's definition of "prurient" from *Roth*, such that the agency's non-use of the Supreme Court definition would be harmless error at most. The definition of prurient that Folsom Street derives from the *Roth* footnote is "appeal[ing] to a shameful or morbid interest in sex." ECF 31 at 18 (citing *Roth*, 354 U.S. at 487 n.20). But that particular language comes not from the *Roth* court's definition of "prurient," but from the Model Penal Code's definition of "obscene," a definition which the Supreme Court referenced only obliquely. *See Roth*, 354 U.S. at 487 n.20. Indeed, if Folsom Street wanted to use the definition of "prurient" that the Supreme Court actually incorporated into its opinion, it could have used the dictionary definitions included in footnote twenty. *Id.* Those definitions describe "prurient" as:

> Itching; longing; uneasy with desire or longing; of persons, having itching, morbid, or lascivious longings; of desire, curiosity, or propensity, lewd;

And "pruriency" as:

> [The] [q]uality of being prurient; lascivious desire or thought.

*Id.* (quoting Webster's New International Dictionary (Unabridged, 2d ed., 1949)). Folsom Street's fairs, which feature (among other things) "erotic" BDSM performances, certainly could spark "desire or longing," or cause patrons to feel "lewd" "curiosit[ies]." *See id.* Folsom Street thus has offered no authority that "sex positive" events cannot also be "prurient."

Folsom Street argues against this conclusion by pointing to *Camelot Banquet Rooms, Inc. v. SBA*, 458 F. Supp. 3d 1044, 1055 (E.D. Wis. 2020). According to Folsom Street, that case "cited to the *Roth* definition of prurient in a decision challenging the SBA's denial" of an award, and therefore "recogniz[ed] that the [*Roth*] definition is applicable to civil litigation generally and to

the SBA's regulations governing . . . pandemic relief program[s]." ECF 35 at 10. But the *Camelot Banquet* court recognized no such thing. Instead, that court merely found that the government had failed to "respond to the *plaintiffs' contention* that, to be prurient, a work or performance must appeal to a shameful, morbid, and unhealthy interest in sex." 458 F. Supp. 3d at 1055 (emphasis added). The court did not endorse that "conten[ded]" definition of "prurient"; instead, it found that the plaintiffs were likely to succeed on the merits of their claims only because "the government ha[d] not developed an [opposing] argument" in its briefing. *Id.* Indeed, when that same court later considered the issue after it had been fully briefed, it endorsed the Merriam-Webster definition of "prurient" and specifically rejected the argument that Folsom Street raises here. *See Camelot Banquet Rooms, Inc. v. SBA*, 555 F. Supp. 3d 598, 606, 606 n.4 (E.D. Wis. 2021), *vacated and remanded on other grounds*, 24 F.4th 640 (7th Cir. 2022).

The Court thus ultimately agrees with the SBA that for an activity to be "prurient" under the statute, the activity need not relate to a "shameful or morbid and unhealthy interest in sex." Instead, the agency can "understand[] prurient in a colloquial sense akin to lascivious, lustful, or erotic." ECF 34 at 21. Even looking to the case law that Folsom Street cites, the Court finds no support for its overly narrow interpretation of the word. The SBA's denial of the Folsom Street award was thus not contrary to law.

**B. The SBA's Finding that Folsom Street Engaged in "Prurient" Activities Was Not Arbitrary and Capricious, and Was Supported by Substantial Evidence.**

A court must also set aside an agency decision if the decision is "arbitrary" or "capricious," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). "Whether a court is viewing an agency decision through the lens of arbitrary-and-capricious action or evaluating it per the substantial-evidence test, a great deal of deference is afforded to the agency's findings and conclusions." *Pac. Ranger, LLC v. Pritzker*, 211 F. Supp. 3d 196, 211 (D.D.C. 2016).

Folsom Street contends that the SBA's denial was arbitrary, capricious, or unsupported by substantial evidence because the SBA "base[d] [its] conclusion on isolated instances of activity that are not sanctioned by Folsom Street and that are contrary to Folsom Street's stated policies and practices." ECF 31 at 20–21. For instance, while the SBA concluded that Folsom Street fairs were based around "public displays of sexual nature," "widespread nudity," and actual live sexual acts, ECF 31 at 21 (quoting ECF 52-2 at 180), Folsom Street says that the opposite is true, because it actually *ejects* patrons for engaging in lewd activity, *id.* Folsom Street thus asserts that the SBA's decision was based not on information relating to Folsom Street itself, but on "reports of unsanctioned activity, [including] simulated sexual acts" that were undertaken by a few out-of-line attendees. *Id.*

The Court finds, however, that the SBA based its decision on substantial evidence related to Folsom Street's *own* activities, not just the potentially unsanctioned activity of its attendees. First, the SBA's decision letter cited Folsom Street's mission, as listed on its tax return, of "creat[ing] world-class leather and fetish events that unite the adult alternative lifestyle communities with safe venues for self expression and exciting entertainment." ECF 52-2 at 178. The SBA then considered Folsom Street's bylaws, which state that it is "committed to cultivating a safe, open, and inclusive environment for the kink, leather, and alternative sexuality communities" and is "dedicated to sexual liberation and the right to pleasure as a crucial part of the whole liberation movement." *Id.*

The SBA also looked at the official posters and flyers Folsom Street created to promote its events, including materials featuring performers in "sexually suggestive clothing" and event maps featuring a "clothing and coat check" section. *Id.* In the Court's view, these promotional materials certainly aimed to attract interest for Folsom Street events through depictions of sexually prurient

content. For example, a flyer for the Folsom Street Fair that was included in the administrative record contains images of (1) a female comedian topless with someone else's hands covering her breasts, (2) performers dressed in bondage, leather, and other fetish wear, and (3) performers posing in sexually suggestive positions. ECF 52-2 at 168. One male performer's photo is of his nude torso and body with a large "X" over his crotch, while other images appear to feature gag balls or the simulation of oral sex. *See id.* To reiterate, these are not images of random attendees at the events; they are images chosen by Folsom Street and its performers to represent the organization itself. That record evidence suffices to uphold the agency's denial. *See Sokol World*, 2025 WL 870323, at *4 (where business's social media pages "contain[ed] numerous suggestive images depicting male go-go dancers in seemingly sexualized poses typically wearing only revealing thong underwear or jockey shorts," the SBA's decision to deny an SVOG award "was not arbitrary and capricious" and was "support[ed]" by "record evidence"). Despite Folsom Street's arguments to the contrary, there is more than enough on this record for the Court to find that the SBA's finding of prurience is well-explained and based on substantial evidence.[9]

**C. The SBA Did Not Arbitrarily Treat Folsom Street Differently from Similarly Situated Entities.**

Lastly, a court should set aside an agency's decision as arbitrary and capricious if the agency treats the subject of the decision differently from how it treats other regulated entities. *See Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005); *MomoCon, LLC v. SBA*, No. 21-cv-2386, 2022 WL 22940750, at *6 (D.D.C. Feb. 10, 2022). Folsom Street argues that because the SBA awarded SVOG funds to other "organizations that put on LGBTQ+ oriented live

[9] Because the Court concludes that the agency's decision was supported by evidence that was itself created by Folsom Street, the Court need not weigh in on whether it was proper for the agency to consider evidence that originated from third parties, such as news articles or social media posts depicting "unsanctioned activity." *Contra* ECF 31 at 18.

performances, festivals, and cultural events," the SBA's different decision in this case should be set aside. ECF 31 at 19. The Court again disagrees.

Folsom Street is correct that the SBA has previously awarded SVOG grants to certain organizations that promote festivals, including some festivals that "celebrate and embrace sexually progressive lifestyles" and cater to "leather and kink" communities. ECF 31 at 19. Indeed, the SBA identified these previous awardees in its denial letter. ECF 52-2 at 180–82. The SBA further acknowledged in that letter that at least some of those previous awardees had events that featured "adult retail, fetish demonstrations, and exotic dancers," or similar programming. *Id.* at 180.

The problem for Folsom Street, however, is that the SBA went on to distinguish each of those ten organizations on the grounds that none of them promoted events featuring "nudity with the intent to sexually arouse patrons," at least according to the evidence the agency was able to discover. *Id.* at 180–82. The agency concluded that Folsom Street, by contrast, did. *Id.* at 182. And from the Court's review of the record (and even just the parts of the record that came from Folsom Street directly rather than third parties), the Court cannot say that such a factual conclusion was unsupported or unreasonable. The Court therefore declines to disturb that finding. *See Archer W. Contractors, LLC v. U.S. Dep't of Transp.*, 45 F.4th 1, 6 (D.C. Cir. 2022) ("An agency's conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.").

Lastly, while Folsom Street might believe that it is arbitrary to distinguish prurient events from non-prurient ones based on whether the event features "nudity with the intent to sexually arouse patrons," that line is not so improperly demarcated that the Court would refuse to defer to it. Indeed, "the line had to be drawn somewhere," and Folsom Street has "fail[ed] to show that the [agency's] decision to draw it [where it did] was in any way arbitrary or capricious." *Process Gas*

*Consumers Grp. v. Fed. Energy Regul. Comm'n*, 712 F.2d 483, 487 (D.C. Cir. 1983). On arbitrary and capricious review, "a court may not substitute its judgment for that of the agency." *Ohio v. EPA*, 603 U.S. 279, 292 (2024). The agency's burden on this posture was to "articulate the reasoning behind its decision with sufficient clarity to enable . . . this Court to understand the basis for its decision." *Snohomish Cnty. v. Surface Transp. Bd.*, 954 F.3d 290, 301 (D.C. Cir. 2020). The SBA has done as much, and whether the Court would draw a different line or not, there is no compelling reason presented to not defer to the agency's decision here.

* * *

For the foregoing reasons, the SBA's cross-motion for summary judgment, ECF 33, is **GRANTED**, and Folsom Street's motion for summary judgment, ECF 31, is **DENIED.** A separate order accompanies this memorandum opinion.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: September 26, 2026